A97A0249. GRANT et al. v. THE STATE.

(488 SE2d 79)

BIRDSONG, Presiding Judge.

We granted this interlocutory appeal to determine whether the trial court erred in denying Jeffery R. Grant's and Georgia Southern Lumber Inc.'s special demurrers to the Racketeer Influenced & Corrupt Organizations Act (RICO) prosecution under OCGA § 16-14-1 et seq. against them. Appellants were indicted with others for timber transactions wherein they fraudulently obtained timber, misrepresented the acreage of timber bought or sold, or sold timber at a price excessively greater than market price by fraudulently calculating the acreage or timber involved.

The indictments are stated in two counts. The first count names 28 defendants and sets forth in detail a particular "pattern of racketeering activity consisting of violations of . . . OCGA § 16-14-4 (b)." In 122 pages this count describes in detail the roles played by the individual and corporate defendants, who were lumber companies, procurement foresters, timber brokers and loggers and real estate brokers; it alleges they "committed various acts of theft by taking against Keadle Lumber Enterprises Inc., and various other timber property owners, making and filing fraudulent timber deeds and uttering forged documents."

Jeffery R. Grant is named as a timber broker participating in the pattern of racketeering activity. Count 1 alleges the pattern of racketeering activity occurred from January 1, 1983 to December 31, 1990, and that each defendant actively participated in the racketeering activity. It further states that on October 23, 1989, the victim, Keadle Lumber Enterprises Inc., discovered "a wide-ranging timber inventory shortage . . . of at least $1.3 million dollars. It was determined that Joseph R. Garrard [a wood procurement forester] had manipu-

lated the company's inventory books by miscrediting timber from various Keadle tracts in an effort to cover up the ongoing criminal enterprise entered into between himself and the defendants. As a part of the criminal enterprise and in order to facilitate and secrete the theft of merchantable timber owned by [Keadle] and other property owners Joseph R. Garrard and the other defendants committed the following acts in furtherance of their criminal activity: inflated or deflated the value of merchantable timber and timber cuts thereby defrauding the timber owner or the mill which purchased the timber; forged contracts which were procured for the cutting of timber not owned by the defendants; sold timber contracts to [Keadle] on land that does not exist; sold timber contracts to [Keadle] for timber they did not own; stole timber from [Keadle] and sold it to [Keadle] and in other markets; inflated the acreage of timber tracts, purchased by [Keadle] through Garrard and the defendants in order to inflate the purchase price paid by [Keadle]; inflated the cruise value on timber contracts sold to [Keadle] through Garrard and the defendants to inflate the purchase price paid by [Keadle]; and miscredited timber which was delivered to [Keadle] for the purpose of covering up previous thefts under contracts. The success of the criminal enterprise depended upon the cooperation of the defendants to move the timber product through their various companies until its origin or final destination was hidden from [Keadle] and/or the other timber property owners."

Subsection "A" of Count 1 avers: "At all times material to this count of this indictment (1) the 'enterprise' was (a) a group of individuals associated in fact although not [as] a legal entity, to-wit: Joseph R. Garrard, Jeffery R. Grant, [and 16 others]; (b) a sole proprietorship/corporation/partnership to-wit: Georgia Southern Lumber Inc.; Bickley Logging Inc.; Pope Brothers Logging Inc.; Penn Pulpwood Company; Ronald Davis Logging Inc.; Bunn Logging Inc.; Flynt Logging Inc.; Truitt & Pitts Logging Inc.; Towaliga Wood Inc.; Evans Timber Company Inc. (2) Joseph R. Garrard . . . was an employee of [Keadle] and was associated in fact with Jeffrey R. Grant [and the other named persons and companies]. (3) Jeffrey R. Grant . . . doing business as Georgia Southern Lumber Inc. . . . was associated in fact with Joseph R. Garrard [and the other named entities]." Thereafter, each of the persons and the companies they owned or by which they "did business as" or were associated or employed by were named and identified in like fashion, stating a total of 18 elements of the enterprise.

Subsection "B" of Count 1 states: "The pattern of racketeering activity consisted of the following: [thereafter, in 106 numbered paragraphs the indictment alleges, as to 106 instances, on particular dates certain named defendants unlawfully took property of Keadle

Lumber Enterprises Inc., having a value in excess of $500 to-wit: money represented by Keadle Lumber Enterprises Check #(*check number provided*) made payable to the named defendants on a *certain stated date*, drawn on the account of Keadle Lumber Enterprises Inc. at a *certain named bank*, with the intent of depriving said owner of said property, contrary to the laws of said state; and that *certain named defendants* on a *certain stated date* in a *named* county did then and there unlawfully and knowingly make and use a false writing by causing a deed to be filed in a *certain named and described Deed Book and page* of a certain county court clerk's office, and that the writing was false in that it contained a false, fictitious and fraudulent entry which the accused knew to be false in that at the time of writing a *named* defendant did not have title to the trees described in said deed]."

Appellant Jeffery R. Grant was named in Predicate Act (9), in that "On August 1, 1986, Jeffery R. Grant, Georgia Southern Lumber Inc., and Joseph R. Garrard, in Upson County Georgia, did then and there unlawfully take property of [Keadle] having a value in excess of $500 to-wit: money represented by [Keadle] check #771, made payable to Jeff Grant d/b/a Georgia Southern Lumber Co. Inc., dated August 1, 1986, drawn on the account of [Keadle] at the West Central Georgia Bank of Thomaston, Georgia, with the intention of depriving said owner of said property." Predicate Act (10) alleges that "on August 1, 1986, Jeffery R. Grant and Joseph R. Garrard, in Pike County, Georgia, did then and there unlawfully and knowingly make and use a false writing by causing a deed to be filed in Deed Book 100, Page 250, Clerk of Superior Court Records, Pike County, Georgia. The writing was false in that it did contain a false, fictitious and fraudulent entry which the accused knew to be false in that at the time of filing, Jeffery R. Grant did not have title to the trees described in said deed [or, as the Predicate Act specifically alleges, in that the land did not exist, or in that Grant had placed this contract at Keadle containing different terms and with different land descriptions]. The recording of the aforementioned deed when filed was a matter within the jurisdiction of the county superior court clerk, contrary to the laws of said state, the good order, peace and dignity thereof." Appellant Grant was similarly named for filing specifically described false deeds in certain counties, in Acts 11, 12, 13, 15, 17, 19, 33, 34, 35, 41, 43, 44; and for unlawfully taking property in excess of $500, to-wit, "money represented by [Keadle's] check" #(number stated), date of check stated, payee named, drawee account named, and drawee bank named, in Acts 14, 16, 18, 29, 30, 32, 40, 42, 48, 54, 105, 106. *Held*:

1. The indictments are in no way defective for being insufficient to support a prosecution and conviction. The requisite predicate acts

and enterprises comprising the charges against appellants are precisely described and named in each instance. No greater detail was required to allege the RICO offense under Georgia law. Due process is satisfied where an indictment puts a defendant on notice of the crimes with which he is charged and against which he must defend. *Dunn v. State*, 263 Ga. 343, 344 (434 SE2d 60); see OCGA § 17-7-54. The true test of the sufficiency of the indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal of conviction. *Jordan v. State*, 220 Ga. App. 627, 629 (470 SE2d 242). In *Jordan*, we held that "[w]hile each count was not specifically individualized to each person named in the count [it] contained the elements of the offense charged and defendants cannot claim the charges were so insufficient that they were surprised by evidence introduced at trial or were unable to prepare a defense." See also *Hopper v. Hampton*, 244 Ga. 361, 362 (260 SE2d 73); *Carter v. State*, 155 Ga. App. 49, 50 (270 SE2d 233). The indictment is read as a whole and one part may incorporate other parts. *Staples v. State*, 199 Ga. App. 551, 552 (405 SE2d 551). "The two requirements of an indictment are that it definitively inform the accused of the charges against him, so that he may present his defense and avoid surprises at trial, and that it protect the accused against another prosecution for the same offense. [Cits.]" Id.

These predicate acts are sufficiently described to permit appellants to mount a defense to them as racketeering acts. The transactions which the State alleges are criminal racketeering charges are specific timber transactions involving specific persons, places, acreages, deals, and owners. The transactions are specifically identified by the numbered checks representing them; the checks are drawn on a certain bank on a certain date, made payable to a certain person. Although the amount is not stated to the penny in each described check, the check and circumstances of the check are sufficiently described to enable appellants to ascertain the precise amount, and to identify with specificity the particular act being prosecuted and thus enable appellants to mount a defense thereto, and to permit them to raise this prosecution as a bar to a future prosecution based on the same act. When the indictment is read as a whole (id.), particular predicate acts are identified by identifying the negotiable instrument appellants received as to each described fraudulent transaction in each named county, and by naming and describing each false deed supporting a transaction.

The indictments set out the alleged offense with sufficient speci-

ficity so as to apprise appellants of the particular charges they must meet, and to allow them to plead this prosecution as a jeopardy bar to future prosecution for the same acts. See *Jordan,* supra; *Hall v. State,* 201 Ga. App. 133 (410 SE2d 448).

2. Appellants contend that charges alleging the clerk of superior court to be a state political "subdivision" are defective, because OCGA § 16-10-20 (entitled "False statements and writings, concealment of facts, and fraudulent documents in matters within jurisdiction of state or political subdivisions") applies to the executive branch only. However, the actual language of the Code section refers to false writings "in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, *or* other political subdivision of this state." (Emphasis supplied.) We find nothing in that language which proscribes false writings made only within the jurisdiction of "the executive branch" of the state; nothing in that language excepts from its terms false statements made in a court clerk's office; nothing in the codal language refers only to "political" subdivisions, whatever this may mean, so as to exclude the judicial branch. And, we do not agree that an office of the "judicial branch" is not a "department or agency of state [county, or city] government."

3. We find entirely erroneous appellants' complaint that the allegations that they "caused" false deeds to be made do not allege an offense within OCGA § 16-10-20 because that statute focuses on the first-person as actor, to-wit, the Code says that *"a person* who knowingly and willfully [commits]" such act shall be convicted and punished. (Emphasis supplied.)

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED MAY 27, 1997 —
RECONSIDERATION DENIED JUNE 27, 1997 — 

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, George T. Smith, Virgil L. Brown & Associates, Virgil L. Brown, Bentley C. Adams III,* for appellants.

*Michael J. Bowers, Attorney General, Michael E. Hobbs, Deputy Attorney General, Joseph L. Chambers, Patrick D. Deering, Robert G. Morton,* for appellee.